**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CRIMINAL CASE NO.** |
| | : | **3:08-cr-00169 (VLB)** |
| **NOEL DESINGO LARA,** | : | |
| **Defendant.** | : | **November 6, 2009** |

**MEMORANDUM OF DECISION REGARDING MOTION FOR CLARIFICATION [Doc. #33]**

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") moves the Court to clarify its Judgment and Order of Restitution dated April 17, 2009 (the "Order"). National Union maintains that the Order does not prevent Octagon North America ("Octagon") from paying any restitution received from Noel Lara to National Union pursuant to the terms of an insurance policy issued by National Union to Octagon. For the reasons set forth below, the Court rules that National Union is entitled to first priority as to restitution paid by Lara to Octagon in accordance with the parties superceding contractual agreement which entitles National Union to be reimbursed for the settlement made before Octagon is reimbursed for the uninsured loss represented by its deductible.

**Factual and Procedural Background**

On July 31, 2008, defendant Lara pled and was adjudicated guilty of the interstate transportation of money obtained by fraud in violation of 18 U.S.C. § 2314. The factual basis of Lara's guilty plea was that he stole a total of approximately $1,500,000 from two companies by which he was employed between

**2006 and 2008, Octagon and MUUS Asset Management Company ("MUUS"). As part of his plea agreement, Lara agreed to and the Court entered a judgment ordering him to make full restitution to the victims of his crimes. Octagon was insured under an insurance policy issued by National Union to Octagon's parent company, the Interpublic Group (the "National Policy"), and MUUS was insured under a policy issued by Chubbs Group.**

**Under the terms of the National Policy, National Union was obligated to compensate Octagon for losses of $999,234 as a result of Lara's crime minus a $300,000 deductible. National Union paid Octagon a total of $699,234. The policy contained a provision governing the order of any recovery stating as follows:**

> **a. Recoveries (except from sureties, insurance, reinsurance or indemnity), less the actual cost of recovery, made after loss will be distributed as follows:**
>
> - **first, the insured shall be reimbursed for loss exceeding the limit of liability or settlement (whichever is less) and the deductible amount (if applicable);**
> - **second, the Company shall be reimbursed for the settlement made;**
> - **third, the insured shall be reimbursed for loss equal to the deductible amount.**

**Lara was sentenced by this Court on March 12, 2009, and judgment was entered on April 17, 2009. As part of his sentence, Lara was ordered to pay restitution for his crimes. The Court's April 17, 2009 Order provided as follows:**

> **The defendant shall pay restitution of $1,537,435.56 immediately. The Court will disburse restitution as follows: $300,000.99 to Victim A**

> [Octagon] and $513,200.57 to Victim B [MUUS] and then upon full payment to the victims, further pay $699,234 to National Union Fire Insurance Co. . . , and $25,000 to Chubb Group[.]

According to National Union, following the Court's Order it formally requested that Octagon forward all restitution received from Lara pursuant to the terms of the National Policy, until National Union is compensated for its $699,234 payment to Octagon. However, Octagon expressed concern that payment of any restitution it receives from Lara to National Union would violate the terms and/or intent of the Court's Order insofar as the Order reflects an intent that the sequence of payments ordered by the Court overrides the contractual provision in the National Policy. National Union seeks clarification from the Court so as to abide by its intent. National Union asserts that the Court should give effect to the aforementioned contractual provision contained in its insurance agreement with Octagon, and find that National Union is entitled to receive first priority as to restitution paid by Lara to Octagon.

## Discussion

Under the "make whole rule," it is widely held that in the absence of contrary statutory law or contractual obligation, the general rule under the doctrine of equitable subrogation is that where an insured is entitled to receive recovery for the same loss from more than one source (e.g. the insurer and the tortfeasor), the insurer may enforce its subrogation rights only after the insured has been fully compensated for all of its loss. See In re DeLucia, 261 B.R. 561, 567 (Bankr. D.

**Conn. 2001) ("The Make-Whole Rule is based upon the longstanding general equitable principle of insurance law that, 'absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for injuries, that is, . . . made whole.'") (quoting Barnes v. Ind. Auto. Dealers Ass'n of California Health and Benefit Welfare Plan, 64 F.3d 1389, 1394 (9th Cir. 1995)); Wasko v. Manella, 849 A.2d 777, 784 (Conn. 2004) ("[U]nder traditional principles of subrogation, if an insured brings an action against a negligent party, an insurer generally is entitled to recover the amount it paid to the insured only if the amount of damages awarded exceeds the difference between the amount the insurer paid and the insured's actual damages."); see also Couch on Insurance 3d, § 223.134. The make whole principle is a "rule of interpretation" that can be signed away; it is thus a "gap-filler" that "only exists when the parties are silent." Barnes, 64 F.3d at 1394.**

**Here, the recovery provision in the insurance agreement between Octagon and National Union clearly and unambiguously gives National Union first priority to any recovery, and therefore overrides the "make whole rule." However, the Mandatory Victim Restitution Act ("MVRA"), pursuant to which restitution was ordered in this case, includes the following provision:**

> **If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution**

> of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

18 U.S.C. § 3664(j)(1). Thus, the MVRA essentially adopts the "make whole rule" and requires victims to be fully compensated for their losses before the insurer may recover from the defendant. The question here is whether a victim can contract away its right to be "made whole" under the MVRA, such that specific language in an insurance contract - like the language in the contract between Octagon and National Union - can override the statute. This appears to be an issue of first impression.

The Court holds that, under the facts and circumstances of this case, the specific language in the National Policy requiring National Union to be paid before Octagon overrides the MVRA provision directing that victims be fully compensated before insurers may recover. The Court recognizes that some jurisdictions have refused to permit an insurer to modify equitable principles of subrogation by contract when the subrogation rights at issue are statutory and the statute does not indicate that something other than the usual principles of subrogation are to be applied. See, e.g., Coplien v. Dep't of Health & Soc. Servs., 349 N.W.2d 92 (Wis. Ct. App. 1984); Capps v. Klebs, 382 N.E.2d 947 (Ind. Ct. App. 1978); see also Couch on Insurance 3d, § 223:146. However, these cases typically arise in the uninsured or underinsured motor vehicle context, where the insurer is a large company and the insured is an individual driver, and thus the insured is at a bargaining disadvantage. Here, by contrast, the insurance agreement at issue was entered into by two sophisticated commercial entities, presumably with equal bargaining

power. The agreement contains specific language indicating that National Union is to receive any recoveries from Lara before Octagon may recover the deductible amount. Therefore, the Court finds that the parties intended their contract to override equitable principles as well as the MVRA. In these circumstances, the Court will not disrupt the agreement between the parties. To hold otherwise would effectively extend insurance coverage to the deductible that Octagon agreed to pay and thereby defeat the purpose of requiring a deductible in the first place. See Couch on Insurance 3d, § 182.10 (purpose of deductible is to keep insurer costs and insureds' premiums down by excluding the costs associated with small losses).

## Conclusion

Based upon the foregoing reasoning, the Court holds that its April 17, 2009 Order does not prohibit Octagon from forwarding restitution payments made by Lara to National Union in accordance with the insurance agreement between the parties.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 6, 2009.